# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILLIP BROWER,

               *Plaintiff,*

    v.

CORIZON HEALTH SERVICES, INC., *et al.*,

               *Defendants.*

CIVIL ACTION
NO. 15-5039

**PAPPERT, J.**                                         **September 20, 2016**

## MEMORANDUM

Plaintiff Phillip Brower ("Brower"), a *pro se*[1] inmate, sued Corizon Health Services, Inc. ("Corizon"), the City of Philadelphia ("the City"), former Prison Commissioner Louis Giorla ("Giorla") and Nurse Practitioner Jean Pantal ("Pantal") (collectively "defendants"). (Compl., ECF No. 5.) Brower alleged, *inter alia*, that defendants provided inadequate medical care in violation of his rights under 42 U.S.C. § 1983 ("Section 1983") and the Eighth Amendment to the United States Constitution.

Defendants filed motions to dismiss for failure to state a claim on February 16, 2016 (Def. Mot. to Dismiss, ECF No. 14), February 24, 2016 (Def. Mot. to Dismiss, ECF No. 15), and March 29, 2016 (Def. Mot. to Dismiss, ECF No. 20). On May 4, 2016, the Court granted the motions and dismissed the complaint with leave to amend. (Order, ECF No. 22.) Brower filed his amended complaint on June 17, 2016. (Am. Compl., ECF No. 25.) He again sued the City, Corizon, and Pantal. He also sued ten more individuals: Dr. Bruce Blatt ("Dr. Blatt"), Deanna Petway ("Petway"), Sean Decker ("Decker"), Elmeada Frias ("Frias"), Dr. Damone B. Jones Sr.

---

[1]       The Court referred Brower's case to the Court's prisoner civil rights panel. (ECF No. 9.) No panel member has yet assumed Brower's representation.

("Dr. Jones"), Dorothy Johnson Speight ("Speight"), Helen Fitzpatrick ("Fitzpatrick"), Chad Lassiter ("Lassiter"), Marcia Makadon ("Makadon"), and Nino Tinari ("Tinari"). Defendants Frias, Blatt, Pantal, Petway, and Decker are described as "medical staff." (Pl. Compl. ¶ 37.) Defendants Jones, Speight, Fitzpatrick, Lassiter, Makadon, and Tinari are members of the Board of Trustees of the Philadelphia Prison System ("PPS").[2] Before the Court is the motion to dismiss the amended complaint filed by the City, Corizon, Pantal, Frias, Petway, Dr. Blatt and Decker. (Def.'s Mot. to Dismiss Am. Compl., ECF No. 34.) Brower filed a response on August 15, 2016. (Pl. Resp. to Mot. to Dismiss, ECF No. 38.)[3] For the reasons explained below, the Court grants in part and denies in part the defendants' motion.

## I.

Brower is paralyzed from the waist down as the result of gunshot wounds. (Am. Compl. ¶ 14.) He is currently a prisoner at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia. (*Id.* ¶ 3.) Because of his medical condition, Brower uses a catheter, extension tubing and a leg bag. (*Id.* ¶ 12.) Brower alleges that while in custody and under the defendants' care, he was repeatedly denied a replacement for his extension tubing over the course of five-and-a-half months. (*Id.* ¶¶ 11–30.) As a result, he developed a serious urinary tract infection that ultimately required hospitalization, may have caused "irreversible damage" to his testicles, and may have rendered him sterile. (*Id.* ¶¶ 28, 30.)

Brower first reported his need for catheter supplies to an unknown medical staff member upon his arrival at CFCF on December 6, 2014. (*Id.* ¶ 11.) The staff member told Brower that

---

[2]     Defendant Giorla was not named in the amended complaint.

[3]     Defendants allege in their motion to dismiss that Brower failed to serve Frias, Petway, and Decker. (Defs.' Mot. to Dismiss, ¶ 5, ECF No. 34.) Brower, however, timely served Frias, Petway, and Decker after defendants filed their motion to dismiss. *See* (Summons Returned Executed, ECF No. 37), (Summons Returned Executed, ECF No. 41). "Filing an amended complaint does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service. However, adding a new party through an amended complaint initiates a new timetable for service upon the added defendant." Charles Alan Wright, et al., 4B *Federal Practice and Procedure* § 1137 (4th ed.).

"supplies are dispensed from medical triage or delivered by your unit nurse." (*Id.*)  Three days later, at medical triage, Brower spoke with Petway, a registered nurse, about his need for supplies. (*Id.* ¶ 12.)  Petway told Brower that she would have Decker, a medical supply pharmacist, order the supplies. (*Id.*)  Brower never received his supplies. (*Id.*)  On December 16, 2014 Brower again met with Petway and requested the necessary catheter supplies. (*Id.* ¶ 13.)  Petway told Brower that no supplies had been delivered. (*Id.*)  He again told Petway that if he failed to change his catheter tubing, he would develop a serious infection. (*Id.*)  Petway did not call or speak with anyone to verify that Brower's supplies had been ordered. (*Id.*)

Brower returned to medical triage for a chronic care visit with Dr. Blatt on December 29, 2014. (*Id.* ¶ 14.)  After discussing his medical history with Dr. Blatt, Brower informed him of his urgent need for new catheter supplies. (*Id.*)  Brower told Dr. Blatt that he had been using the same tubing for nearly two months and thought he had developed a urinary tract infection. (*Id.*)  Dr. Blatt told Brower that there were no supplies. (*Id.*)  He ended the examination and ordered Brower to leave. (*Id.*)

Brower filed his first grievance with the PPS on January 27, 2015, stating that he needed medical supplies. (*Id.* ¶ 16.)  This grievance went unanswered, as did further grievances filed by Brower on February 22, 2015, March 17, 2015, (*Id.* ¶¶ 16–19.), February 27, 2015, April 17, 2015, June 9, 2015, and August 13, 2015, (Am. Compl. ¶ 39).

On April 29, 2015 Brower returned to medical triage. (*Id.* ¶ 19.)  He spoke again to Petway about his need for supplies, telling her he had not received new catheter supplies since his admission to CFCF. (*Id.*)  Petway again told Brower that Decker was responsible for ordering medical supplies. (*Id.*)

Brower returned to medical triage a week later, this time speaking directly with Decker. (*Id.* ¶ 20.)  Brower told Decker that he was experiencing "excruciating pain" and he was "positive" that he had a urinary tract infection.  (*Id.*)  He reiterated that it had been months since he had replaced his urinary extension tubing.  (*Id.*)  Decker told Brower that he was not familiar with Brower's need for extension tubing, that Corizon healthcare administrator Frias was not approving Brower's supply order, and that he had informed Frias that Brower had contracted a urinary tract infection.  (*Id.*)  Decker told Brower that he should file a grievance.  (*Id.*)

Near the beginning of May, Brower returned to medical triage because he was suffering kidney and bladder pain.  (*Id.* ¶ 21.)  Pantal diagnosed Brower with a severe urinary tract infection and prescribed him an antibiotic.  (*Id.*)  Brower told Pantal that he had been using the same urinary extension tubing for over four months—thus, without new supplies, the antibiotic was unlikely to cure the urinary tract infection.  (*Id.*)  Pantal told Brower that he was "not there for supplies," and then told the correction officer that Brower's appointment was over.  (*Id.*)

On May 24, 2015, Brower returned to medical triage with severe pain in his testicles, severe kidney pain, and a fever of 102.3 degrees.  (*Id.* ¶ 22.)  Nurse Megettigan ("Megettigan"), who is not named as a defendant, informed Pantal of Brower's condition.  (*Id.* ¶ 23.)  Without examining Brower, Pantal told Megettigan to "just give [Brower] a Tylenol and send him back to his cell."  (*Id.* ¶ 25.)  Megettigan noticed that Brower was in "severe pain" and was "shivering," so she kept Brower at medical triage.  (*Id.* ¶ 26.)  Two hours later, Dr. Clemons, who is also not named as a defendant, examined Brower.  (*Id.* ¶ 27.)  Dr. Clemons immediately ordered an ambulance to transfer Brower to Aria Torresdale hospital.  (*Id.*)  On May 29, 2015, Doctors informed Brower that he had "irreversible damage" to his testicles, it is "highly possible" that he

may not be able to reproduce, and he may experience periodic pain for the rest of his life.  (*Id.* ¶ 30.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Because Brower filed his complaint *pro se*, the Court "must liberally construe his pleadings."  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers").  "Liberal construction of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure."  *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) (citation and quotation omitted).  "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally."  *Bush v. City. of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)).

A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

## III.

Brower asserts claims against the defendants under Section 1983 for inadequate medical treatment under the Eighth Amendment.  To establish a prima facie case under Section 1983, Brower must first demonstrate that a person acting under color of law deprived him of a federal right.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Brower must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights.  *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'"[4] *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Accordingly, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  The prohibition against cruel and unusual punishment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

### A.

To establish an Eighth Amendment claim for inadequate medical treatment against Pantal, Petway, Dr. Blatt, Frias and Decker, Brower must show: (1) that defendants were deliberately indifferent to his medical needs and (2) that those needs were serious. *Rouse*, 182

---

[4]     The protections afforded by the Eighth Amendment are applicable to the States via the Fourteenth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976) (citing *Robinson v. California*, 370 U.S. 660 (1962)).

F.3d at 197.  Defendants do not dispute that Brower's medical needs were serious.  (*See generally* Def.'s Mot. to Dismiss.)  The only issue is whether defendants were "deliberately indifferent" to those needs.

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"  *Rouse*, 182 F.3d at 197.  "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"  *Estelle*, 429 U.S. at 105–06.  Accordingly, deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."  *Rouse*, 182 F.3d at 197 (citation and quotation omitted).  Additionally, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Ascenzi v. Diaz*, 247 F. App'x 390, 391 (3d Cir. 2007) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).  The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse*, 182 F.3d at 197 (citations omitted).

"[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Farmer*, 511 U.S. at 836.  Therefore, "[a] prison official acts with deliberate indifference to a prisoner's medical needs only if he or she 'knows of and disregards an excessive risk to inmate health or safety.'"  *Wall v.*

*Bushman*, 639 Fed. App'x 92, 94 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).  "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Deliberate indifference is also satisfied when prison authorities "deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury."  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Moreover, "where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care," deliberate indifference is present.  *Id.*  If the alleged inadequate care "was a result of an error in medical judgment," then Brower's claims must fail.  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  If, however, the failure to provide adequate care was deliberate, and motivated by non-medical factors, then Brower's claims are actionable.

### i.

Brower's amended complaint sufficiently alleges that Pantal acted with deliberate indifference.  Pantal, a physician assistant, first saw Brower at the beginning of May 2015, when Pantal diagnosed him with a urinary tract infection and prescribed him an antibiotic.  (Am. Compl. ¶ 21.)  In response, Brower told Pantal that because he had been using the same urinary extension tubing for over four months, an antibiotic would not solve his problem.  (*Id.*)  Pantal told Brower he was "not there for supplies" and ended the examination.  (*Id.*)  Brower later returned to medical triage, where Pantal prescribed Tylenol to Brower for his urinary tract infection without ever examining him.  (*Id.* ¶ 25.)

A physician assistant who treats a urinary tract infection with an antibiotic while disregarding the patient's repeated requests for catheter supplies is arguably acting with a mental

state of recklessness.  This is not simply a "dispute . . . over the adequacy of the treatment."

*Ascenzi*, 247 F. App'x at 391 (quoting *United States ex rel. Walker*, 599 F.2d at 575 n.2).  On the

contrary, this is a "reasonable request for medical treatment" the denial of which "expose[d]

[Brower] to undue suffering or the threat of tangible residual injury."  *Monmouth Cty.*

*Correctional Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (quotation omitted); *see also*

*Spruill*, 372 F.3d at 235.  At the very least, Brower's allegations are sufficient to suggest that

Pantal had "knowledge of the need for medical care," (Brower's need for new catheter supplies),

and intentionally refused to provide it.  *Id*.

The facts here are analogous to those in *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

In *Durmer*, an inmate sued prison officials for failure to provide appropriate physical therapy,

which resulted in the loss of use of his left leg and foot.  *Durmer*, 991 F.2d at 65.  The prisoner

had suffered a stroke and had been receiving physical therapy prior to his incarceration.  He was

denied therapy for several months while incarcerated, despite his "repeated notification to the

authorities of his deteriorating condition and his need for immediate therapy."  *Id.* at 68.  The

Third Circuit reversed the district court's grant of summary judgment for defendant, holding that

a jury could conclude that a doctor's withholding of physical therapy was deliberate indifference

and not mere negligence.  *Id.* at 69.  As in *Durmer*, Brower repeatedly notified various prison

officials, including Pantal, of his immediate need for catheter supplies.

Defendants rely on *Muhammed v. Schwartz*, 96-cv-6027, 1997 WL 43015 (E.D. Pa. Jan.

27, 1997), for the proposition that Brower must allege that medical officials had *actual*

*knowledge* of a substantial risk, and cannot rely on "obviousness" or what "officials should have

known."  (Def. Mot. to Dismiss Am. Compl., at 11–12.)  The *Muhammed* court cited the

Supreme Court in *Farmer* for this proposition.  *Farmer*, however, was not so unforgiving.  The

*Farmer* Court explicitly allowed "inference[s] from circumstantial evidence," such that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Beers-Capitol*, 256 F.3d at 133. Brower has alleged that Pantal (and others) were aware of his failure to receive adequate catheter supplies. Being deprived of catheter supplies for nearly six months could very well constitute the substantial risk that the *Farmer* court contemplated.

Defendants also rely on *Brown v. Borough of Chambersburg*, 903 F.2d 274 (3d Cir. 1990). The *Brown* court stated that "as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Id.* at 278. Pantal was arguably not exercising professional judgment when he ordered Petway to give Brower Tylenol without ever examining Brower. The allegations against Pantal do not pertain to a "dispute . . . over the adequacy of the treatment," *Ascenzi*, 247 F. App'x at 391, or "professional judgment," *Brown*, 90 F.2d 274, but concern instead the failure to provide treatment at all. At minimum, Brower alleges facts sufficient to establish that Pantal was deliberately indifferent to his serious medical needs, and the motion to dismiss with respect to Pantal is denied.

**ii.**

Brower told Petway, a nurse at CFCF, about his condition and his urgent need for new supplies on no less than three different occasions. The first time, in December 2014, Petway told Brower she would speak to Decker about ordering the supplies. (Am. Compl. ¶ 12.) After a week had passed without Brower receiving new supplies, he spoke with Petway again. This time, Petway told Brower that no supplies were delivered. (*Id.* ¶ 13.) Despite Brower's plea that a failure to change his catheter tubing would almost certainly result in a urinary tract infection,

Petway did not speak with anyone or attempt to verify if Brower's supplies had been ordered. (*Id.*)

Petway's third meeting with Brower was on April 29, 2016.  (*Id.* ¶ 19.)  Here, Petway learned that Brower had yet to receive catheter supplies—*four months* after he first requested them.  She again merely referred Brower to Decker.  (*Id.*)  Petway's alleged role in preventing Brower from obtaining the new catheter tubing could well have contributed to a substantial risk to Brower and one of which Petway must have known.  *See Beers-Capitol*, 256 F.3d at 133.  Brower has alleged facts sufficient to establish that Petway was deliberately indifferent to his serious medical needs and the Court denies defendants' motion to dismiss with respect to Petway.

### iii.

Brower met with Dr. Blatt at the end of December 2014, nearly a month after his initial request for additional catheter supplies.  (Am. Compl. ¶ 14.)  Brower alleges that he told Dr. Blatt of his need for supplies and his belief that he had contracted a urinary tract infection.  In response, Dr. Blatt told Brower he was not responsible for supplies.  He did not examine Brower to determine if he had a urinary tract infection; he instead ended the appointment.  (*Id.*)

Dr. Blatt ignored Brower and refused to treat him for a potential urinary tract infection.  Taken as true, Brower's allegations establish that Dr. Blatt's conduct was neither an "inadvertent failure to provide adequate medical care," *Estelle*, 429 U.S. at 105, nor something that creates a dispute over the "adequacy of treatment."  *Ascenzi*, 247 F. App'x at 391.  Dr. Blatt refused to treat Brower for a valid medical need.  *See Wall*, 639 Fed. App'x at 94 ("A prison official acts with deliberate indifference to a prisoner's medical needs only if he or she knows of and disregards an excessive risk to inmate health or safety."  (quotation omitted)); *see Simonds v. Delaware County*, 13-7565, 2014 WL 3030435, at *3 (E.D. Pa. July 1, 2014) ("A prison official's

being put on notice of a prisoner's serious medical need and failing to remedy or investigate that need constitutes deliberate indifference." (quoting *Natale v. Camden City Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)); *Rouse*, 182 F.3d at 197. Brower has alleged facts sufficient to establish that Dr. Blatt was deliberately indifferent to his serious medical needs.

### iv.

Brower has not, however, stated a plausible claim for relief with respect to Frias. Brower alleges that Decker told him that Frias was not approving Brower's supply order, and that Decker had informed Frias that Brower had contracted a urinary tract infection. (Am. Compl. ¶ 20.) Brower asserts that Frias "refused" to order his supplies and "deliberately ignore[d]" his serious medical needs. (*Id.*) Brower also claims that Frias failed to timely order the necessary catheter supplies and failed to properly train her subordinates, including nurses and physicians assistants. (*Id.* ¶ 35.)

Brower's claims against Frias are conclusory and insufficient to show deliberate indifference. Brower never contends that he met with Frias. His only knowledge of her actions is through Decker's alleged comments that Frias was not approving orders. Nothing in the complaint, save Brower's bare assertion, suggests that Frias either intentionally withheld orders to harm Brower, or that Frias was aware of a substantial risk of serious harm to Brower and ignored this risk. The Court is not bound to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.[5]

---

[5]      While Brower generally describes Frias as "medical staff," (Am. Compl. ¶ 37), he also specifically alleges that Frias is a healthcare administrator. (*Id.* ¶ 5.) To the extent that Frias is a non-medical official, the Third Circuit has stated that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236 (citing *Durmer*, 991 F.2d at 69); *see also Durmer*, 991 F.2d at 69 ("Neither of [the] defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

The failure to train claim against Frias fails for similar reasons. The failure to train must "amount to a deliberate indifference to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). Moreover, "the identified deficiency in a . . . training program must be closely related to the ultimate injury," in other words, it "must have actually caused the constitutional violation." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)) (quotations omitted). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Brower does not explain why any training was inadequate or what would have constituted adequate training. Moreover, he has not alleged facts to establish that it was Frias' responsibility to train nurses or physicians assistants. Even if training was Frias' responsibility, Brower would still fail to state a claim under the deliberate indifference standard because he fails to plead that a pattern of similar constitutional violations occurred as a result of the alleged failure to properly train employees. Brower conclusorily alleges a generalized failure to train "nurses, physician assistant[s], and registered nurses." (Am. Compl. ¶ 35.) The amended complaint does not allege facts sufficient to establish that Frias was deliberately indifferent to Brower's serious medical needs nor does it establish that Frias's purported failure to train medical staff amounted to deliberate indifference that caused a pattern of constitutional violations.

**v.**

The amended complaint is also dismissed with respect to Decker. Petway first told Brower that Decker was responsible for ordering supplies. (Am. Compl. ¶ 12.) When Petway

met with Brower four months later, she again cited Decker as the individual in charge of ordering medical supplies. (*Id.* ¶ 19.) Brower met with Decker for the first time in May 2015. (*Id.* ¶ 20.) Decker informed Brower that he had not heard of his need for catheter supplies. (*Id.*) Decker explained to Brower that Frias was not ordering supplies. (*Id.*) Decker also told Brower that he had informed Frias of his urinary tract infection. (*Id.*) Decker then advised Brower that he should file a grievance. (*Id.*)[6]

Brower claims that Decker's "deficiency in training," "lack of experience with paraplegic patients," and lack of knowledge about Brower's need for catheter supplies amounts to deliberate indifference. (*Id.* ¶ 34.) These are legal conclusions which the Court need not credit. *See Iqbal*, 556 U.S. at 679. Brower does not explain how or in what ways Decker lacked training or experience with paraplegic patients. Decker's failure to know about Brower's catheter-supply issues, cannot, on the allegations in the amended complaint, constitute deliberate indifference.

Decker's alleged behavior nonetheless differs substantially from that of Petway and the other defendants. Decker only met with Brower on one occasion, and he explicitly denied having knowledge of Brower's need for catheter supplies. Moreover, Brower never alleges that he was under Decker's care—Brower contends that he and Decker simply had a meeting during which Decker provided Brower with information and recommended he file a grievance. Brower has failed to alleged facts sufficient to establish that Decker was deliberately indifferent to his serious medical needs.[7]

---

[6]     These allegations against Decker are somewhat confusing and they appear, at least in some respects, to be contradictory. For example, it is unclear to the Court how Decker could be unaware of Brower's need for supplies but at the same time tell Brower that Frias was aware of his urinary tract infection. *See* (Am. Compl. ¶ 20).

[7]     Brower alleges that Decker is a medical supply pharmacist. (Am. Compl. ¶ 8.) He also alleges that Decker is a "supply nurse." (Am. Compl ¶ 19.) Like Frias, however, Brower also generally refers to Decker as "medical staff." (*Id.* ¶ 37.) If Decker is non-medical staff, he may have been justified in "believing that [Brower was] in capable hands," since Brower was "under the care of medical experts." *Spruill*, 372 F.3d at 236; *see also supra*, note 5.

**B.**

The Court analyzes Brower's claims against the City under the standard for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Brower's claims against Corizon are analyzed under the same framework. *See Natale*, 318 F.3d at 583 (analyzing a Section 1983 claim against a private corporation providing medical care in prisons under *Monell*). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrew*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citations and quotation omitted). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of

constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (citation and quotation omitted).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("If . . . the policy or custom does not facially violate federal law, causation can be established only by demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences." (quotation omitted)). "A showing of simple or even heightened negligence will not suffice." *Id.* In other words, custom "requires proof of knowledge and acquiescence by the decisionmaker." *McTernan*, 564 F.3d at 658. So a claim will survive only if it "allege[s] conduct by a municipal decisionmaker." *Id.*

Brower has successfully stated an Eighth Amendment claim against some of the defendants. He must also establish a policy or custom attributable to the municipality (or Corizon) and plead facts sufficient to  show that the policy or custom caused the alleged constitutional violation. *See Monell*, 436 U.S. at 658. Brower alleges four different "customs" which purportedly caused the violation of his rights. First, he claims that the City and Corizon "have become accustomed to the Courts dismissing civil actions submitted by prisoners, and because of this, the medical treatment of prisoners has begun to decline to the point of callousness, especially in medical emergencies." (Am. Compl. ¶ 38.) Second, he contends that

16

the City's use of a private healthcare corporation (Corizon) has led to "unnecessary delays and lack of continuity in treatment." (*Id.*) Third, he alleges that "it has become a custom to put the budget first before adequate healthcare for prisoners" and this has caused "unnecessary wanton infliction of pain in this instant civil action." (*Id.*) Finally, he asserts that "the authorities have become acustom [sic] to not responding to grievance [forms]," and "had [the City] responded . . . [Brower] would have never contracted a urinary tract infection." (*Id.*)

### i.

Brower's first allegation does not identify any policy or custom, let alone a specific policymaker. Instead he alleges that the City and Corizon have "become accustomed" to favorable court treatment. This is insufficient to raise a claim under the *Monell* framework. Instead, Brower must identify a custom and specify what exactly that custom was. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

### ii.

Brower's second allegation also fails for several reasons. In this claim, Brower has alleged a specific custom—the use of a private healthcare corporation by the City. Since this custom does not facially violate federal law or constitutional rights, he "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs*, 520 U.S. at 407. Brower fails to do so. He again fails to name a specific policymaker, *see McTernan*, 564 F.3d at 658, and his "repeated personification of the City's actions is equally fatal to this claim [as] [h]e fails to allege any fact to suggest a municipal decisionmaker's personal knowledge of the constitutionally violative conduct alleged here." *Washington v. City of Philadelphia*, No.11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012); *see also* Complaint at ¶¶ 41, 61–65, *Washington*, 2012 WL 85480, No.11-3275 (using

phrases such as "the City's policies," "officials of the City," and "the City developed and maintained policies").

The allegations in the amended complaint constitute conclusory statements that the use of a private healthcare provider has resulted in delays. The complaint states that "all the officials involved are aware" of these delays. (Am. Compl. ¶ 38.) Brower alleges no facts to support these bald assertions. Nothing in the complaint suggests that a city policymaker decided to use (or acquiesced in the use of) a private healthcare provider with deliberate indifference to delays in prisoner care. Finally, Brower has not pleaded facts sufficient to show a causal link between the City's use of a private healthcare provider and his alleged constitutional injury. To be sure, Brower discusses in great detail the extent of the delays he experienced while attempting to acquire catheter supplies. But none of his allegations causally tie these particular delays to the use of a private, rather than public, healthcare provider.

### iii.

Brower's third allegation also fails to state a claim under *Monell*. Brower claims that it is a custom for the City and Corizon to "put the budget first before adequate healthcare" for prisoners and this has caused "unnecessary wanton infliction of pain." (Am. Compl. ¶ 38.) Again, Brower has failed to name a specific policymaker. *See McTernan*, 564 F.3d at 658. Regardless, his claims are conclusory. He does not explain what specific policies exist or "what basis he has for thinking that 'policies to save money' affected his medical treatment." *See Winslow v. Prison Health Services*, 406 Fed. App'x 671, 674 (3d Cir. 2011) (upholding the district court's dismissal under Rule 12(b)(6) when prisoner claimed he was harmed by a "policy to save money").

Moreover, it is perfectly acceptable for the City or Corizon to consider costs.  "[T]he naked assertion that [d]efendants considered cost in treating [Plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost constraints under which law-abiding citizens receive treatment."  *Id.*; *see also Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir.1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society).  Because it is not a violation of federal law to consider costs, Brower must plead facts that meet the deliberate indifference standard.  *Bd. of Cty. Comm'rs*, 520 U.S. at 407.  He has failed to do so.  Without more, Brower's assertion that the City and Corizon had a policy or custom of denying or delaying medical treatment to inmates based on cost-savings cannot survive defendants' motion to dismiss.  *See e.g.*, *Simonds v. Delaware County*, 13-7565, 2014 WL 3030435, at *5 (E.D. Pa. July 1, 2014).

**iv.**

Lastly, Brower claims that prison authorities have a custom of not responding to grievance policies and that this failure to respond led to his ultimate medical suffering.  (Am. Compl. ¶ 38.)  Unlike his previous allegations, Brower provides specific factual allegations to support this claim.  Brower filed his first grievance reporting his need for catheter supplies with the Philadelphia Prison System on January 27, 2015.  (*Id.* ¶ 16.)  He again filed grievances on February 22, 2015, March 17, 2015, (*Id.* ¶¶ 16–19.), February 27, 2015, April 17, 2015, June 9, 2015, and August 13, 2015, (Am. Compl. ¶ 39).  Brower alleges that prison officials never responded to any of these grievances.  Nonetheless, this is still insufficient to state a claim under *Monell*.  *See, e.g.*, *Williams v. Lackawanna County Prison*, 7-1137, 2010 WL 1491132, at *5

(M.D. Pa. Apr. 13, 2010) (dismissing Plaintiff's *Monell* claims that prison warden failed to respond to grievances).

Prison officials' failure to respond to grievances is not a *per se* violation of Brower's constitutional rights.  *See Tapp v. Proto*, 718 F. Supp. 2d 598, 616 (E.D. Pa. 2010) ("[T]he Constitution does not guarantee a functioning grievance process because a prisoner or pretrial detainee may file suit in federal court if his grievances are not answered."); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007) (citing *Hoover v. Watson*, 886 F. Supp. 410, 418–19 (D. Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995)); *Anderson v. Horn*, 95-6582, 1996 WL 266109, *2 (E.D. Pa. May 17, 1996) ("[P]risoners do not have a constitutional right to a prison grievance procedure.").  Thus, Brower must plead facts sufficient to establish deliberate indifference.  *Bd. of Cty. Comm'rs*, 520 U.S. at 407.  The amended complaint fails to allege facts which could show whether a policy or custom caused Brower's grievances to go unanswered.

**IV.**

"In civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("[I]n *forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amended would be inequitable or futile.").  "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

This is a civil rights action brought by Brower under Section 1983 and the Eighth Amendment.  The Court has not given Brower leave to amend his complaint with respect to his allegations against Frias and Decker.  Because of this, in addition to the lack of clarity and confusion over Frias and Decker's alleged positions and roles, *see supra*, notes 5–7, the Court will grant Brower leave to amend.

Brower has already amended his complaint against the City and Corizon.  Any further amendments of the complaint with respect to these two defendants would be futile and inequitable to the City and Corizon.  *See Gadling–Cole v. West Chester Univ.*, 868 F. Supp. 2d 390, 401 (E.D. Pa. 2012) ("The Plaintiff has already amended her complaint once in response to the Defendants' first motion to dismiss, which required the Defendants to file a subsequent motion to dismiss.  This amendment failed to cure the above deficiencies and to allow further amendment would be inequitable to the Defendants . . . .").  Due to the fundamental substantive deficiencies in Brower's original complaint and amended complaint with respect to his *Monell* claims, the Court dismisses these claims with prejudice.

An appropriate order follows.

BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

21